STATE OF CONNECTICUT *v.* EDWARD YOPP
(12036)
(12037)

O'CONNELL, SCHALLER and SPEAR, Js.

Argued June 6—decision released August 30, 1994

*Susan F. Filan,* special public defender, with whom was *Donald Dakers,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *Elpedio Vitale,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1),[1] and one count each of larceny in the first degree in violation of § 53a-122 (a) (1),[2] conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a)[3] and

---

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime . . . ."

[2] General Statutes § 53a-122 provides in pertinent part: "(a) A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and: (1) The property or service, regardless of its nature and value, is obtained by extortion . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

53a-134 (a) (1),[4] attempted assault in the first degree in violation of §§ 53a-49[5] and 53a-59 (a) (1),[6] larceny in the second degree in violation of § 53a-123 (a) (3),[7] and theft of a firearm in violation of § 53a-212 (a).[8] The defendant claims that the trial court improperly (1) denied his motion to suppress the identification procedure used by the police in violation of his right to counsel under both the fifth and sixth amendments to the United States constitution, (2) denied his motion to suppress the pretrial identification procedure utilized by the police in violation of his due process rights under the fourteenth amendment to the United States constitution, and (3) consolidated the two cases for trial, thus unduly prejudicing him and depriving him of his due process rights under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We affirm the judgment of the trial court.

The defendant was charged in two substitute informations. In the first case, the defendant was charged

[4] See footnote 1.

[5] General Statutes § 53a-49 provides in pertinent part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[6] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[7] General Statutes § 53a-123 (a) provides in pertinent part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[8] General Statutes § 53a-212 (a) provides: "A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm, as defined in subdivision (19) of section 53a-3."

with robbery in the first degree, kidnapping in the second degree,[9] and larceny in the first degree. In the second case, the defendant was charged with robbery in the first degree, conspiracy to commit robbery in the first degree, attempted assault in the first degree, larceny in the second degree, and theft of a firearm. The defendant elected to be tried by a jury of six and the two cases were consolidated for trial. The defendant was convicted of all charges except kidnapping in the second degree.

The jury reasonably could have found the following facts. In the early morning of October 18, 1991, Gary Malanson of West Haven drove his red Honda Civic to New Haven to buy cocaine. Underneath the front floor mat on the driver's side was the passbook for a joint account held by Malanson and his mother. At about 1 a.m., Malanson saw Eddy Rosenbloom and James Fields standing together on Edgewood Avenue. Malanson had purchased cocaine from Rosenbloom on several occasions and knew that Fields was Rosenbloom's supplier.

Rosenbloom and Fields entered Malanson's Honda and Malanson drove to Rosenbloom's apartment at 59 Derby Avenue. When Malanson stopped the car, Fields pointed a sawed-off shotgun at him and demanded $500. Malanson refused to give him the money. Fields told Malanson that he needed to borrow the car to take care of some business. He directed Malanson to go into Rosenbloom's apartment and tell "E.K.," later identified as the defendant, to come outside. Malanson waited in the apartment while Rosenbloom, Fields and the defendant drove away in the Honda. About forty-five minutes later, the three men returned to the apartment with the shotgun and four small bags of cocaine.

---

[9] General Statutes § 53a-94 provides in pertinent part: "(a) A person is guilty of kidnapping in the second degree when he abducts another person."

Malanson and Fields used some of the cocaine. At about 3:30 a.m., Rosenbloom, Fields and the defendant took the shotgun and drove away in the Honda.

At 4 a.m., Gianfranco Benedetti left work at the New Haven Register. While he was stopped at a traffic light, a woman flagged him down, and stated that she needed a ride to Branford. Although Benedetti was heading in another direction, he agreed, after some pleading by her, to drive her to Branford.

On the way, the woman suggested taking a shortcut onto Dwight Street. While Benedetti was traveling on Dwight Street, a small red car sped past his car, cut in front of him and stopped. Three men got out of the car, identified themselves as police officers, and approached Benedetti's car. Benedetti got out of his car, claiming to have done nothing wrong. The woman disappeared.

One of the men, later identified as the defendant, grabbed Benedetti, while a second man stood behind the defendant holding a sawed-off shotgun. Hoping to stop the men from harming him, Benedetti shouted, "I'm a cop!" When asked for identification by the defendant, Benedetti pulled a silver .22 caliber pistol out of his pocket. Although loaded, the pistol could not be fired until it was cocked and the safety was taken off. The defendant grabbed the pistol by the barrel and a struggle ensued between the defendant and Benedetti. The man with the shotgun ran down the street, while the third man began to hit Benedetti in the face and ribs. About three to five minutes later, the man with the shotgun returned and hit Benedetti with the gun. Benedetti let go of the pistol. The defendant told the man with the shotgun to shoot Benedetti, but he did not respond. The defendant then pointed the pistol in Benedetti's face and pulled the trigger. The gun did not fire. The three men entered the red car and drove away.

At about 5:30 a.m., Rosenbloom, Fields and the defendant returned to Rosenbloom's apartment. The three men left the apartment and returned about thirty minutes later. The defendant suggested that Malanson accompany them in the Honda. After driving a short time, they parked the car. The defendant pointed the shotgun at Malanson and, while holding Malanson's bank passbook, demanded all the money in the account, $641. Malanson explained that there was a hold on the account for approximately $500, but that he would withdraw the balance when the bank opened. They drove back to Rosenbloom's apartment.

Later that morning, the defendant accompanied Malanson to a branch of Centerbank. The defendant concealed the shotgun under his jacket. Malanson withdrew $161 and gave it to the defendant. Fields was waiting outside the bank. They drove to another branch of Centerbank where Malanson unsuccessfully attempted to withdraw the remaining money from the account.

The three then drove to Malanson's home in West Haven. The defendant told Malanson to tell his mother that he had been in a car accident with the defendant and needed a check for $600 to pay for the damage to the defendant's car. The defendant accompanied him inside the house. Malanson's mother agreed to give him the money. Malanson made out a check to himself for $600, drawn from a joint account that he and his mother held at New Haven Savings Bank. Fields drove the defendant and Malanson to a New Haven Savings Bank branch in West Haven, where Malanson cashed the check and gave the proceeds to the defendant and Fields. Malanson was dropped off at Rosenbloom's apartment, where he waited for Fields and the defendant to return with his car. They returned at about 7:30 p.m.

Four days later, on October 22, 1991, Malanson saw the defendant at a gas station in West Haven. The defendant demanded $100, and Malanson gave him $20. Later that day, Fields knocked on Malanson's door. Malanson looked out and then called the West Haven police. Upon the arrival of the police, Malanson told them about the events of October 18 and Fields was taken into custody.

I

The defendant claims that the trial court improperly denied the motion to suppress the identification procedure used by the police, in violation of his right to counsel pursuant to the fifth amendment to the United States constitution. The defendant also claims that the denial of the motion to suppress the identification procedure violated his right to due process of law under the fourteenth amendment to the United States constitution. Because the defendant did not preserve these claims at trial, and can prevail only if the claims meet the conditions set out in *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), the claims will be considered together.

The following additional facts are necessary to resolve this matter. The defendant was charged with the robbery of Malanson and arraigned on November 7, 1991. Counsel was appointed at that time. On November 18, 1991, Benedetti was asked to come to the police station to look at some individuals with regard to the crimes committed against him. Detective Mel Cartoceti of the New Haven police took Benedetti to the courthouse. When they entered the courthouse lobby, Cartoceti told Benedetti to look at everyone in the building, including those in the hallway, and to keep in mind the persons who had robbed him. They entered courtroom B. Court was not yet in session and there were ten to twenty other people in the room, including some

African-Americans. The sheriff told Cartoceti that "they are going to bring in the individuals." Twenty-three men came in and sat down. Fourteen were African-American. After looking at the men for a few minutes, Benedetti pointed out the defendant as the man he believed to be the robber who had fought with him for the pistol. Benedetti later indicated he was 80 percent sure of his identification.

"In *State* v. *Golding,* [supra, 213 Conn. 233] our Supreme Court reformulated the test of reviewability in [*State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973)]. The *Golding* court held that when a defendant fails to preserve his claim at trial he can prevail on that claim only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Velez,* 30 Conn. App. 9, 20, 618 A.2d 1362, cert. denied, 225 Conn. 907, 621 A.2d 289 (1993); *State* v. *Gamble,* 27 Conn. App. 1, 13, 604 A.2d 366, cert. denied, 222 Conn. 901, 606 A.2d 1329 (1992). We conclude that the defendant has failed to provide an adequate record on which to review these claims and thus fails to meet the first prong of *Golding.*[10]

Our Supreme Court stated in *State* v. *Golding,* supra, 213 Conn. 240, that "[t]he defendant bears the respon-

---

[10] Our Supreme Court has held that we "remain free to dispose of the claim 'by focusing on whichever condition is most relevant in the particular circumstances.' " *State* v. *Watlington,* 216 Conn. 188, 192, 579 A.2d 490 (1990), quoting *State* v. *Golding,* supra, 213 Conn. 240. Thus, we need not consider any of the remaining conditions.

sibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." The record in this case does not provide an adequate basis for reviewing either of the defendant's claims.

### A

The evidentiary support for the defendant's fifth amendment claim consists entirely of the representations of counsel at trial regarding what allegedly had occurred leading up to the identification procedure. "[S]tatements of counsel are not evidence." *State* v. *Roman*, 224 Conn. 63, 68, 616 A.2d 266 (1992), cert. denied, U.S. , 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993). There is no actual evidence in the record establishing that the defendant objected to being taken to the courthouse for the lineup. The record is insufficient, as well, to determine whether the defendant invoked his fifth amendment right to counsel prior to the identification proceeding. See *Edwards* v. *Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). Accordingly, the defendant's fifth amendment claim must fail because he cannot satisfy the first prong of *Golding*.

### B

The defendant's fourteenth amendment due process claim also fails for lack of an adequate record on which to review the claim. The defendant failed to incorporate into the record the decision of the trial court from the suppression hearing on this issue. Neither a written memorandum of decision nor a transcript signed by the trial court presiding at the suppression hearing was

included in the record. See Practice Book § 4059. We, therefore, have no way of knowing the reasoning of the trial court in denying the motion to suppress.

The record, therefore, contains no evidence indicating that the identification procedure used "was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification." *State* v. *Arroyo,* 13 Conn. App. 687, 690, 539 A.2d 581, cert. denied, 208 Conn. 805, 545 A.2d 1103 (1988). Because the defendant has not provided us with an adequate record, he fails to satisfy the first prong of *Golding.*

## II

The defendant also claims that the trial court improperly admitted into evidence the identification procedure in violation of his sixth amendment right to counsel. Because the issues are inadequately briefed, we decline to review this question. *State* v. *Rumore,* 28 Conn. App. 402, 410–11, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). In the absense of a sufficient review and analysis of the case law applicable to this case, we have no basis on which to determine whether the defendant's sixth amendment right to counsel was violated.

## III

The defendant's final claim is that the trial court improperly granted the state's pretrial motion to consolidate the two informations filed against him over his objection. He asserts that the resulting prejudice was beyond the curative power of the trial court's instructions and deprived him of his right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We do not agree.

The trial court has broad discretion as to whether to join separate charges for trial. Practice Book § 829;[11] *State* v. *Boscarino,* 204 Conn. 714, 720, 529 A.2d 1260 (1987); *State* v. *Rose,* 29 Conn. App. 421, 429–30, 615 A.2d 1058, cert. denied, 224 Conn. 923, 618 A.2d 529 (1992); *State* v. *Carpenter,* 19 Conn. App. 48, 62, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). "The court enjoys broad discretion which, absent manifest abuse, an appellate court may not disturb." *State* v. *Owens,* 25 Conn. App. 181, 193, 594 A.2d 991, cert. denied, 220 Conn. 910, 597 A.2d 337 (1991); *State* v. *King,* 187 Conn. 292, 299, 445 A.2d 901 (1982). To demonstrate that the trial court abused its discretion, the defendant bears the heavy burden of showing that the joinder resulted in substantial injustice beyond the curative power of jury instructions. *State* v. *Herring,* 210 Conn. 78, 94–95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Whether a joint trial will be substantially prejudicial to the rights of the defendant means more than that it will be less advantageous to the defendant. *State* v. *Bell,* 188 Conn. 406, 411, 450 A.2d 356 (1982); *State* v. *Rose,* supra, 429–30.

When a defendant stands accused of two or more similar offenses, they may be joined at trial if they are based on related acts that evince a common scheme, intent or motive. *State* v. *Greene,* 209 Conn. 458, 464–65, 551 A.2d 1231 (1988). In this case, the crimes arose out of a sequence of events, with interrelated facts, occurring in the same twenty-four hour period.

Joinder is considered appropriate where evidence of one crime is admissible in the trial of another. Id., 464; *State* v. *Pollitt,* 205 Conn. 61, 68, 530 A.2d 155 (1987).

---

[11] Practice Book § 829 provides: "The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

In this case, much, if not all, of the testimony of the two victims was admissible in both cases. "Where evidence of one incident *can* be admitted at the trial of the other, separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Emphasis in original.) *State* v. *Pollitt,* supra, 68. There would be no significant benefit to the defendant by having separate trials because evidence of one crime would be admissible in the other trial. Therefore, the defendant is not substantially prejudiced by the joinder of the informations.

Our Supreme Court has held that a trial court should consider several factors in determining whether severance is required. "These factors include: (1) whether the charges involved discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings,* 216 Conn. 647, 658, 583 A.2d 915 (1990); *State* v. *Rose,* supra, 29 Conn. App. 429–30. We conclude that joinder did not result in substantial injustice.

First, the charges against the defendant involved discrete, easily distinguishable factual scenarios. Although both crimes occurred in the same twenty-four hour period, they had different factual circumstances and different victims. One case did not involve violence, but rather a victim, Malanson, who knew the people who robbed him. The other case involved the stopping of a car, and a violent struggle over a pistol in which the

victim sustained injuries. In that case, the victim, Benedetti, was not familiar with the perpetrators. The distinctiveness of the factual scenarios made it unlikely that the jurors would confuse the two cases.

Second, although an element of violence was involved in this case, the conduct was not so brutal or shocking as to create a substantial risk that the jury, with explicit instructions to treat each offense separately, would nevertheless treat the evidence cumulatively. The physical harm inflicted on Benedetti was not of the type the Supreme Court considered brutal or shocking in *State* v. *Boscarino,* supra, 204 Conn. 723; see *State* v. *Herring,* supra, 210 Conn. 96.

Third, the trial was of short duration and the evidence was not complex. The jury heard the testimony of ten witnesses over six days with the admission of twenty-nine exhibits. See *State* v. *Herring,* supra, 210 Conn. 97; cf. *State* v. *Boscarino,* supra, 204 Conn. 723–24. "The complexity and risk of confusion [at] trial did not approach that involved in *Boscarino.*" *State* v. *Herring,* supra, 97.

"Finally, although ' "a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence" '; *State* v. *Boscarino,* supra, [204 Conn.] 724–25, quoting *State* v. *Tinsley,* 180 Conn. 167, 170, 429 A.2d 848 (1980); where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." *State* v. *Herring,* supra, 210 Conn. 97. In this case the trial court admonished the jury to keep the informations separate and consider only the evidence that was pertinent to the particular charge in reaching a verdict on that charge. The trial court's instruction further minimized any risk of prejudice that

might have been caused by the joinder in this case. We conclude that the trial court did not abuse its discretion in granting the state's motion to consolidate.

The judgments are affirmed.

In this opinion the other judges concurred.