STATE OF CONNECTICUT *v.* MICHAEL MARSALA
(14952)

Dupont, C. J., and O'Connell and Freedman, Js.

---

Argued September 19—officially released November 12, 1996

*Susan Brown*, supervisory assistant public defender, for the appellant (defendant).

*Christopher T. Godialis*, deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Gerard F. Esposito*, assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant, Michael Marsala, appeals from the judgment of conviction, rendered after a jury trial, of twenty-five[1] counts of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3).[2] The trial court sentenced the defendant to twelve consecutive three month sentences on the first twelve counts and entered an unconditional discharge as to the remaining thirteen counts for a total effective sentence of thirty-six months consecutive to a sentence the defendant was already serving. On appeal, the defendant claims (1) that his conviction was based on insufficient evidence, (2) that the trial court should not have denied his motion for severance, (3) that § 53a-183 is unconstitutionally vague and overbroad, and (4) that the jury was improperly instructed on the need for unanimity as to the specific actus reus. We affirm the judgment of the trial court.

The jury reasonably could have found the facts that follow. Between April 4 and June 26, 1994, the defendant made at least twenty-five telephone calls to the victim. Many of the calls were made during early morning hours. On April 4, there were four calls made in the thirty-five minutes between 6:45 a.m. and 7:20 a.m. On June 17 and June 19, the defendant made four and five calls, respectively, to the victim. Most of the telephone calls concerned the victim's daughter, Tamra. The contents of the calls varied. One of the calls, made at 5 a.m., wished Tamra a happy birthday, while another claimed that "the Bridgeport police . . . don't think very much of you and your slut daughter. They know her from the streets. In fact even quite a few of them

---

[1] The defendant was originally charged with twenty-seven counts of harassment, but the trial court directed a judgment of acquittal on two counts because the state produced no evidence on those two counts.

[2] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

have had her." During several of the calls, the victim asked the caller to stop calling. The victim additionally threatened to call the police. On the advice of her attorney, the victim allowed her answering machine to pick up and record most of the later calls.

The victim positively identified the defendant as the caller in each of the telephone calls about which she testified. The victim testified that she had met the defendant in May, 1992, while she was visiting her daughter in a hospital. The victim had spoken with the defendant for ten or fifteen minutes on that occasion. The victim stated that she spoke to the defendant between ten and twelve times during the two years between meeting him and when the telephone calls started. She indicated that she was familiar with his voice from these conversations. Additionally, two months before the trial, the victim listened in person to the defendant's live voice for about seven minutes and identified it as the voice she heard on the telephone.

I

The defendant's insufficiency of evidence claim has two prongs. The first is that there was insufficient evidence to identify him as the caller, and the second, that there was insufficient evidence to prove that the caller's intent was "to harass, annoy or alarm."

"In reviewing [a] sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Mejia*, 233 Conn. 215, 223–24, 658 A.2d 571 (1995)." (Citation omitted; internal quotation marks omitted.) *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996).

The defendant claims that his identity as the caller has not been established because the victim's testimony was the only evidence produced to show the identity of the caller. The issue of the caller's identity is one of fact properly to be resolved by the jury. *State* v. *Jones*, 234 Conn. 324, 333, 662 A.2d 1199 (1995). The victim testified that she positively identified the defendant as the caller on each call; she recognized the caller's voice as that of the defendant from meeting him two years earlier and from prior telephone conversations with him; and she had been able to identify the defendant as the caller in a "voice-up." The victim additionally testified that the content of most of the calls concerned her daughter, who knew the defendant, and that when she went to visit her daughter on one of the days he had telephoned, the defendant was at her daughter's address, as he had said he would be. An attorney, hired by the victim to try to stop the defendant from calling, testified that the defendant had called him in response to the letter the attorney had sent to him. The jury reasonably could have concluded beyond a reasonable doubt, therefore, from the cumulative effect of both the circumstantial and direct evidence, that it was the defendant who repeatedly had made telephone calls to the victim.

The second prong of the defendant's insufficiency of evidence claim is closely related to the defendant's severance claim. Because our reasoning as to severance also controls the insufficiency of evidence claim, we will consider them together in the following part.

## II

The defendant claims that the trial court should have granted his motion to sever the twenty-five counts of harassment. The defendant asserts that the joinder of the claims is unduly prejudicial because the jury is likely to aggregate the evidence from each count of

harassment, thereby consolidating all the evidence and convicting the defendant on the totality of the evidence instead of keeping the evidence separate and distinct. In addition, the defendant argues that severance should have been granted because he wanted to testify as to counts one through eleven but not as to the rest of the counts. Finally, the defendant argues that the counts should have been severed because a jury considering multiple charges against the defendant may consider him a "bad person" who must have done something wrong and not deliberate over the different counts against him. The defendant further asserts that the jury had insufficient evidence to convict him on each individual count of harassment.

"General Statutes § 54-57[3] and Practice Book § 829[4] authorize a trial court to order a defendant to be tried jointly on charges arising separately. In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State v. Herring*, 210 Conn. 78, 94–95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989).

"Because of its prejudicial impact, evidence of prior acts of misconduct is inadmissible merely to show a

---

[3] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[4] Practice Book § 829 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

defendant's bad character or tendency to commit criminal acts. . . ." (Citations omitted.) *State* v. *Pollitt*, 205 Conn. 61, 69, 530 A.2d 155 (1987). "An exception to the rule prohibiting the substantive admission of a defendant's prior criminal offenses in the trial of another case is when the collateral crime tends directly to prove the commission of the principal crime, or the existence of any element of the principal crime . . . . Consistent with this rule, the state may introduce evidence of other crimes to establish a defendant's intent, identity, malice, motive or system of criminal activity." (Citations omitted; internal quotation marks omitted.) *State* v. *Boscarino*, 204 Conn. 714, 722, 529 A.2d 1260 (1987).

"Where evidence of one incident can be admitted at the trial of [another incident], separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." *State* v. *Pollitt*, supra, 205 Conn. 68; *State* v. *King*, 35 Conn. App. 781, 791, 647 A.2d 25 (1994), aff'd, 235 Conn. 402, 665 A.2d 897 (1995).

We agree with the trial court that joinder of the twenty-five claims was proper because evidence relating to each count could have been used in a trial of each of the other counts to prove the identity of the defendant, the intent of the defendant, and to demonstrate a common scheme. See *State* v. *King*, supra, 35 Conn. App. 791. "To be relevant on the issue of identity or common scheme, the other crime charged must be 'sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other.' *State* v. *Ibraimov*, 187 Conn. 348, 354, 446 A.2d 382 (1982). The similarities connecting the crimes need not be so unique as to constitute 'signature crimes.' See *State* v. *Pollitt*, supra, 205 Conn. 69–70. Rather, the features may be of substantial but lesser distinctiveness which, if considered separately, would be insufficient

to raise an inference, but when taken together yield a distinctive combination. *State* v. *Jones*, 205 Conn. 638, 661, 534 A.2d 1199 (1987)." *State* v. *King*, supra, 791.

In this case, a single victim received more than twenty telephone calls she identified as having been made by the same man. Although the contents of the calls were not identical, the victim was able to identify the defendant as the caller each time. The testimony that the victim asked the defendant during several calls not to call again would have been admissible on later counts to demonstrate that the calls were unwanted, and to show that the later calls were intended to annoy or alarm. The fact that there were twenty-five calls would have been relevant to showing a common plan or scheme to harass, annoy or alarm.

Even if evidence of the other calls would not have been admissible at each individual trial of twenty-five counts, we would still conclude that joinder of the twenty-five counts was proper. The factors to be considered in determining whether severance is necessary include whether the charges involve discrete, easily distinguishable factual scenarios, whether one or more of the counts alleges brutal or shocking conduct by the accused, which would prejudice the defendant as to all the charges, or whether the trial is long or very complex. *State* v. *Chance*, 236 Conn. 31, 42, 671 A.2d 323 (1996).

Severance is usually not necessary if the charges against a defendant are distinguishable. Here, each count referred to a separate telephone call, each on a given date, at a given time. The victim was able to testify to the contents and circumstances of each telephone call individually. "Where the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jurors to consider the evidence relevant to each offense separately and distinctly, we will not conclude that the trial court has manifestly

abused its discretion in denying the defendant's motion for severance. *State* v. *Pollitt*, [supra, 205 Conn. 68]." *State* v. *Cain*, 25 Conn. App. 503, 515, 596 A.2d 449 (1991), aff'd, 223 Conn. 731, 613 A.2d 804 (1992). The trial court's instructions to the jury emphasized that "these are twenty-five separate and distinct alleged incidences" that the jury must consider individually. The court cautioned the jury not to aggregate the evidence and not to allow its decision on one count to influence its decision on the other counts.

The second factor of *Chance*, whether the crimes were violent or brutal, is disposed of easily. Telephone calls, while annoying and unwanted at times, cannot usually be characterized as violent or brutal.

The trial's length and complexity, the third factor, is also resolved in the state's favor. The trial lasted two days, there were three witnesses and no exhibits. See *State* v. *Jennings*, 216 Conn. 647, 659–60, 583 A.2d 915 (1990) (five day trial with fourteen witnesses and twenty-eight exhibits of short duration and evidence not complex); *State* v. *Herring*, supra, 210 Conn. 97 (no undue duration or complexity where eight days of testimony by twenty-three witnesses); but see *State* v. *Boscarino*, supra, 204 Conn. 723–24 (ten weeks of testimony with fifty-five witnesses constituted undue duration and complexity). Further, as previously stated, the evidence was presented in an orderly fashion so as to mitigate any potential complexity and risk of juror confusion. See *State* v. *Jennings*, supra, 660.

The defendant claims that the counts should have been severed because he wanted to testify as to some of the counts but not as to others. There is no need for severance of claims unless a defendant " 'makes a convincing showing that he has both important testimony to give concerning [some counts] and [a] strong need to refrain from testifying on [others]. In making

such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on [some counts] and his reasons for not wishing to testify on [others]—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.' " *State* v. *Schroff*, 198 Conn. 405, 409, 503 A.2d 167 (1986), quoting *Baker* v. *United States*, 401 F.2d 958, 977 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970); see also *State* v. *Chance*, supra, 236 Conn. 46. The defendant here has failed to give any indication whatsoever as to the reason he wanted to testify as to some counts but not others. Further, the defendant never disclosed the substance of his expected testimony. This lack of information has deprived the court of the ability to determine whether his claim of prejudice was genuine.

There is a clear presumption in favor of the consolidation of charges, and against severance. *State* v. *Chance*, supra, 236 Conn. 38. We conclude that the joinder of the twenty-five counts of harassment did not result in substantial injustice and that the defendant has not established that the trial court manifestly abused its discretion by refusing to sever the counts.

The defendant claims that there was insufficient evidence to prove his intent in each count of harassment individually.[5] The defendant claims that "the calls in

---

[5] The testimony establishes that all of the telephone calls, including the first one, were not made in a vacuum. The calls were made in the context of the victim's prior knowledge of the defendant and of her daughter's opinion of the defendant. The jury, during deliberations, requested that the first ten minutes of the victim's testimony be replayed for them. It is in the early part of this testimony that the victim discusses her daughter's relationship with the defendant.

"Q. Now, your daughter Tamra, does she have a relationship with Mr. Marsala?

and of themselves were content neutral; they provided information to the recipient of the calls and nothing more." Therefore, the defendant argues, the state has not proved the defendant's intent in making the telephone calls. Because we cannot know with certainty the defendant's intent, we must infer it from the reaction of the victim and the circumstances of each call. See *State* v. *Tomasko*, 238 Conn. 253, 257, 681 A.2d 922 (1996). The jury could infer that the defendant's intent was to harass, annoy or alarm from the evidence that eight of the calls came before 8 a.m., that the victim repeatedly asked the defendant to stop calling, and that the defendant told the victim things about her daughter that were confidential.[6] Such evidence would be cross admissible on the different claims, and, consequently, the jury had sufficient evidence to infer beyond a reasonable doubt the defendant's intent.

### III

The defendant next claims that § 53a-183, harassment in the second degree, is unconstitutionally void for vagueness and overbroad. The defendant admits that

---

"A. They knew one another.

"Q. Can you give us some of the circumstances of their . . . how they got to know each other?

"A. Well, my daughter is a drug addict, presently in recovery. They met on the streets down there. . . .

"Q. And if you can, I don't know if you can or not, how would you describe your daughter's relationship with Mr. Marsala?

"A. She didn't like him. She was afraid of him."

The victim testified that the defendant, in the first telephone call, told her, " 'so your daughter is in a halfway house in Bridgeport, the Mary Magdalene House,' and I said, 'how do you know that?' He said, 'she called me,' and I said, 'No, I don't believe that. She doesn't want any part of you. Leave her alone, stop calling me.' "

Knowing the victim's daughter's history with the defendant, the jury could reasonably have believed that the defendant's intention in making this call was to alarm the victim with his knowledge of her daughter's whereabouts.

[6] The victim's daughter was residing in a halfway house, the location of which was confidential. The defendant indicated in the calls that he knew where she was and had seen her there.

this claim was not raised at trial but maintains that it should be reviewed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] We agree with the defendant that the record is adequate to review the alleged claim of unconstitutionality under the standard set forth in *State* v. *Indrisano*, 228 Conn. 795, 800, 640 A.2d 986 (1994). *Indrisano* states: "To enable us to review a claim that a statute is facially vague, the record needs to reflect only the fact that the defendant was convicted under the statute in question. To enable us to review a claim that a statute is vague as applied, the record must further reflect the conduct that formed the basis of the defendant's conviction." Id.[8] Although the issue passes the two initial conditions of *Golding*, the defendant has failed to brief this issue adequately. He has not analyzed the vagueness claim sufficiently nor has he related any of the facts of this case to an analysis of existing case law. See *State* v. *Miranda*, 41 Conn. App. 333, 338, 675 A.2d 925, cert. granted on other grounds, 237 Conn. 932, 677 A.2d 1372 (1996); *State* v. *Mozell*, 37 Conn. App. 574, 579–80, 657 A.2d 686, cert.

---

[7] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

[8] Because it is difficult to hypothesize about a case without a record that reflects the statute of which a defendant was convicted or without a record that reflects a defendant's conduct, it appears that *State* v. *Indrisano*, supra, 228 Conn. 800, supersedes the decision of *State* v. *Santiago*, 218 Conn. 483, 485, 590 A.2d 434 (1991). *Santiago* held that "the failure of the defendant to raise the constitutionality of [a statute] at trial leaves the record inadequate for a fair consideration of whether the statute was unconstitutionally applied to the circumstances . . . ." *State* v. *Santiago*, supra, 485. *Indrisano* also affects *State* v. *Pitt*, 28 Conn. App. 825, 612 A.2d 60, cert. denied, 224 Conn. 907, 615 A.2d 1049 (1992), because in that case, decided before *Indrisano*, this court relied on *Santiago*.

denied, 234 Conn. 910, 660 A.2d 355 (1995); *State* v. *Merritt*, 36 Conn. App. 76, 97, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995) (certification improvidently granted); *State* v. *Yopp*, 35 Conn. App. 740, 750, 646 A.2d 298 (1994); see also Practice Book § 4064C.[9] We, therefore, do not review the issue.

## IV

The defendant claims that the trial court improperly failed to instruct the jury members that they must be "unanimous as to the defendant's actus reus." The defendant's argument is that the jury should have been instructed that there must be unanimity as to whether the defendant's *intent* was to harass, or to annoy, or to alarm the victim. The defendant is attempting, therefore, to distinguish an intent to harass from an intent to annoy or from an intent to alarm. In situations where "the alternatives of the mens rea [intent] component give rise to the same criminal culpability, it does not appear critical that the jury may have reached different conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct." *State* v. *Suggs*, 209 Conn. 733, 763, 553 A.2d 1110 (1989). Here, the precise nature of the defendant's intent does not implicate any lack of unanimity regarding the defendant's conduct.

The conduct of the defendant, if the testimony of the victim was believed, was not in dispute, and that

[9] We note, however, that the constitutionality of this statute was addressed in *State* v. *Anonymous*, 34 Conn. Sup. 689, 695–96, 389 A.2d 1270 (1978). Justice David Shea, writing for the Appellate Session of the Superior Court, held that the harassment statute was not unconstitutionally overbroad. Id. In a decision denying the petition of "Anonymous" for a writ of habeas corpus, the United States Court of Appeals for the Second Circuit also determined § 53a-183 is not unconstitutionally overbroad. *Gormley* v. *Director, Dept. of Adult Probation*, 632 F.2d 938 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980).

testimony did not permit significant disagreement among the jurors as to what the defendant did. See *State* v. *Flynn*, 14 Conn. App. 10, 39, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). Furthermore, a trial court need not instruct a jury that it must be unanimous as to at least one of two or more alternative ways of committing the same crime before it may find a defendant guilty unless (1) the alternative acts with which the defendant has been charged are conceptually distinct; and (2) the state has presented evidence to support each of the alternative acts with which the defendant has been charged. *State* v. *Tucker*, 226 Conn. 618, 646, 629 A.2d 1067 (1993). A jury need not decide which of two statutorily prohibited ways were used to commit a crime if the two ways are practically indistinguishable. Id., 647. Although the trial court defined harass, annoy and alarm separately,[10] it is clear that the words have conceptually similar meanings. See id., 646 (no conceptual distinction between use of force and threats to use force); *State* v. *Thomas*, 19 Conn. App. 44, 45–46, 560 A.2d 486 (1989) (impairment of minor's health and of minor's morals not conceptually distinct).

There is no conceptual distinction among acts intended "to harass," "to annoy," and "to alarm," and no instruction on unanimity of verdict as to them was necessary.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The trial court instructed the jury as follows: "Harass means to trouble, worry or torment. Annoy means to irritate, vex, bother as by repeated action. Alarm means to make suddenly afraid or anxious, frightened."