[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner alleges in his Revised Petition, filed July 20, 2001, CT Page 883 that both his trial and appellate attorneys were ineffective, and that his convictions and resulting incarceration violate Amendments Fifth and Fourteenth of the United States Constitution and/or Article I, Section 8
of the Connecticut Constitution. The petitioner is currently in the custody of the Commissioner of Correction serving a total effective sentence of twenty-five (25) years. The total effective sentence was imposed as a result of convictions obtained in two separate criminal cases, CR91-6-349449T and CR91-6-348840T, which were consolidated for a jury trial.
In CR91-6-348840T (hereafter referred to as "the Malanson case"), the petitioner was arrested during the night of November 6 to 7, 1991, and arraigned on November 7, 1991 at the Geographic Area (GA) #6 courthouse in New Haven. Tr. (July 24, 2001), at 15. A public defender was appointed at the arraignment to represent the petitioner in the Malanson case. Id. The matter was continued to November 18, 1991, for purposes of the petitioner entering his plea as to the counts in the Malanson case. Resp't Ex. D, at 5. The petitioner, however, testified that he "received a court date to come back in two weeks from the 7th [of November]." Tr. (July 24, 2001), at 16. The petitioner also testified that he was brought back to GA #6 eleven days after the arraignment even though he did not have a court date. Id.
The record indicates that the Malanson case was on November 18, 1991 ordered transferred from GA #6 to New Haven Judicial District, Part A, and was continued to November 26, 1991. Pet'r Ex. D, at 4; also see
Resp't Ex. 1. The record also indicates that the information charging the petitioner with the offenses in CR91-6-349449T (hereafter referred to as "the Benedetti case") was filed in GA #6 during the November 1991 criminal term. Pet'r Ex. D, at 46a. The arrest warrants for the Benedetti offenses are dated November 21, 1992; the return on the arrest warrants was November 22, 1992. Id., at 28, 30 and 32. On November 22, 1991, the Benedetti case was transferred to New Haven Judicial District, Part A.Id., at 46a. An appearance by a public defender was filed on November 25, 1991. Id., at 24. Motions for Appointment of Special Public Defender in both the Malanson and the Benedetti cases were filed on November 25, 1991, said motions being granted on November 26, 1991. Id., at 2 and 24. Attorney Donald Dakers was appointed in both cases as a special public defender on November 26, 1991; Id.; and the petitioner entered pleas of not guilty to all counts in both cases. Id., at 1 and 23.
On March 4, 1992, the State's motions to consolidate the Malanson and Benedetti cases for trial were granted. Ultimately, the petitioner was convicted by a jury and a total effective sentence of twenty-five (25) years was imposed on November 6, 1992. Id., at 46b The petitioner appealed his convictions, which were affirmed by the Appellate Court in CT Page 884State v. Yopp, 35 Conn. App. 740, 646 A.2d 298 (1994), after which the petitioner filed this habeas corpus petition alleging ineffective assistance by both trial and appellate counsel.
Count One of the Revised Petition now has a sole claim remaining against trial counsel: that trial counsel "failed to adequately preserve the trial record for an appeal as to whether an identification procedure was unduly suggestive or in violation of the petitioner's constitutional rights." Rev. Pet., at 2.[1] Count Two alleges ineffective representation by appellate counsel in that counsel "failed to properly brief the issue as to whether the identification procedure violated [the petitioner's] right to counsel under thesixth amendment of the United States Constitution." Id., at 3. These two claims, both which arise out of a single identification procedure, are the sole claims before the Court in the habeas corpus petition.
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, 759 A.2d 118 (2000). "Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal citations and quotations omitted.) Id., 317-8. Alsosee Commissioner of Correction v. Rodriguez, 222 Conn. 469, 477,610 A.2d 631 (1992).
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [47 Conn. App. 253, 264,704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998)]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998). CT Page 885
A claim of ineffective assistance of appellate counsel, however, must establish "(1) that his appellate counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law, and (2) that this lack of competency contributed so significantly to the affirmance of his conviction as to have deprived him of a fair appeal, thus causing an unreliable conviction to stand." Sekou v. Warden,216 Conn. 678, 690, 583 A.2d 1277 (1990). "[I]n order for the petitioner to establish prejudice resulting from his appellate counsel's deficient performance, he must establish that, as a result of that performance, there remains a probability sufficient to undermine the confidence in the verdict that resulted in his appeal." Bunckley v. Commissioner ofCorrection, 222 Conn. 444, 454, 610 A.2d 598 (1992). If the issue not raised by his appellate counsel lacks merit, the petitioner cannot sustain even that first part of this dual burden since the failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation. Sekou v. Warden, supra,216 Conn. 690; Tillman v. Commissioner of Correction, 54 Conn. App. 749,756-7, 738 A.2d 208 (1999).
As stated previously, both counts of the petition arise out of an identification procedure conducted on November 18, 1991, the date on which the Malanson case was transferred from GA #6 to New Haven Judicial District, Part A. "On November 18, 1991, Benedetti[, the victim in the second case,] was asked to come to the police station to look at some individuals with regard to the crimes committed against him. Detective Mel Cartoceti of the New Haven police took Benedetti to the courthouse. When they entered the courthouse lobby, Cartoceti told Benedetti to look at everyone in the building, including those in the hallway, and to keep in mind the persons who had robbed him. They entered courtroom B. Court was not yet in session and there were ten to twenty other people in the room, including some African-Americans. The sheriff told Cartoceti that `they are going to bring in the individuals.' Twenty-three men came in and sat down. Fourteen were African-American. After looking at the men for a few minutes, Benedetti pointed out the defendant as the man he believed to be the robber who had fought with him for the pistol. Benedetti later indicated he was 80 percent sure of his identification."State v. Yopp, supra, 35 Conn. App. 747-8.
In his direct appeal, the petitioner raised two claims arising from the Benedetti identification: "that the trial court improperly 1) denied his motion to suppress the identification procedure used by the police in violation of right to counsel under both the fifth and sixth amendments
to the United States constitution, [and] 2) denied his motion to suppress the pretrial identification procedure utilized by the police in violation CT Page 886 of his due process rights under the fourteenth amendment to the United States constitution[.]" Id., at 743. The Appellate Court noted that "[b]ecause the defendant did not preserve these claims at trial, and can prevail only if the claims meet the conditions set out in State v.Golding, 213 Conn. 233, 567 A.2d 823 (1989), the claims will be considered together." Id., at 747.
The Appellate Court held that "[t]he evidentiary support for the defendant's fifth amendment claim consists entirely of the representations of counsel at trial regarding what allegedly had occurred leading up to the identification procedure. Statements of counsel are not evidence. There is no actual evidence in the record establishing that the defendant objected to being taken to the courthouse for the lineup. The record is insufficient, as well, to determine whether the defendant invoked his fifth amendment right to counsel prior to the identification proceeding. Accordingly, the defendant's fifth amendment claim must fail because he cannot satisfy the first prong of Golding." (Internal citations and quotations omitted.) Id., at 749.
The Appellate Court also found that "[t]he defendant'sfourteenth
amendment due process claim also fails for lack of an adequate record on which to review the claim. The defendant failed to incorporate into the record the decision of the trial court from the suppression hearing on this issue. Neither a written memorandum of decision nor a transcript signed by the trial court presiding at the suppression hearing was included in the record. We, therefore, have no way of knowing the reasoning of the trial court in denying the motion to suppress. The record, therefore, contains no evidence indicating that the identification procedure used `was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification.' Because the defendant has not provided us with an adequate record, he fails to satisfy the first prong of Golding." Id.,
at 749-50.
Lastly, as to the claim raised on appeal regarding the trial court's admission into evidence the identification procedure being a violation of the petitioner's sixth amendment right to counsel, the Appellate Court noted that "[b]ecause the issues are inadequately briefed, we decline to review this question. In the absence of a sufficient review and analysis of the case law applicable to this case, we have no basis on which to determine whether the defendant's sixth amendment right to counsel was violated." Id., at 750.
The petitioner, who was the only witness at the habeas trial, testified that prior to being arraigned on November 7, 1991 for the Malanson case, he "received a court date to come back in two weeks from the 7th [of CT Page 887 November]." Tr. (July 24, 1991), at 16. The petitioner also testified that he did not have a court date on the 18th of November, that he had a piece of paper indicating his next court appearance, and that he refused to go to court. Id. According to the petitioner's testimony, "when [he] got to GA #6, [he] asked a sheriff downstairs who [he] was familiar with from going to court for a whole year there, [he] asked him, `What am I doing here?' [The sheriff said he didn't know. [The petitioner] asked him where was [his] attorney. [The sheriff] said, `Well, they're trying to locate her now.' [The petitioner] said, `Well, I'm not going nowhere until I talk to her.' Id.
The petitioner additionally testified that "every time a sheriff came in to take somebody upstairs or bring somebody in to go to court [he] would say, `Hey, did you find [Attorney Chris Perra] yet?' `We're working on it. We're working on it.' They kept blowing me off." Id., at 17. When all the arraignments were called to go upstairs into court, the petitioner was told he had to go upstairs, too, even though he thought he had already been arraigned. Id. According to his testimony, the petitioner was surrounded by five or six sheriffs and made to go upstairs into the courtroom, which was filled with spectators, together with twenty-two or twenty-three individuals who were being arraigned. Id. The petitioner indicated that he was the last one brought into the courtroom.Id. The petitioner also testified that after "the judge called two or three arraignees . . . a sheriff walked up to [him] and . . . whispered . . . `Hey, Yopp, you're in the wrong courtroom. You've got to go back downstairs'." Id. The petitioner then was brought back downstairs and put back in his cell. The petitioner testified that he again asked for Attorney Perra and was told that she was not at the courthouse. Id.
"[T]he petitioner asserts that his trial counsel, Donald Dakers, failed to properly preserve the record to provide appropriate evidence as to Yopp's objection to his presence at a line-up. Pet'r Br., at 1. Attorney Dakers allegedly also "failed to adequately preserve the trial record for an appeal as to whether an identification procedure was unduly suggestive or in violation of the petitioner's constitutional rights." Rev. Pet., at 2. As to the alleged failure to provide appropriate evidence as to the petitioner's objection to his presence at the identification, this Court finds that this claim is without merit. The only evidence in support of this claim is the petitioner's testimony that he was not going anywhere until his attorney, Chris Perra, was there. Attorney Perra did represent the petitioner in the Malanson case; however, she did not represent him in the Benedetti case at the time of the identification, nor did any other attorney, and it was this latter case for which the identification was being made.
The Fifth Amendment requires a custodial interrogation for the right to CT Page 888 counsel to attach. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). The Fifth Amendment also provides protection against self incrimination that is compelled and is verbal or communicative in nature. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926,18 L.Ed.2d 1149
(1967). "It is clear that [an] identification [procedure] such as [a lineup] . . . do[es] not violate fifth amendment rights. The privilege against self-incrimination protected by the fifth amendment to the United States constitution cannot be invoked in a situation where a suspect is merely required to provide evidence of physical characteristics." (Internal citations omitted.) State v. Blevins, 13 Conn. App. 413, 418,536 A.2d 1002 (1988).
In Blevins, the "defendant, who was not handcuffed, was driven to the police station and asked to sit in the lobby near the door. He was not guarded, and sat alone. Thereafter, he was asked to step into a small room with a one-way mirror along with [another] man who had been taken into custody[.]" The victim then identified the defendant as the perpetrator of the offense. Id., at 416. On appeal, Blevins claimed that he was under an implied arrest and had a right to have counsel presentId., at 418. The appellate court, relying on Wade, disagreed and held that identification procedures where a suspect is merely required to provide evidence of physical characteristics do not violateFifth Amendment rights. Id.
"As [the Connecticut Supreme Court] has consistently held, a defendant's right to counsel, under the sixth amendment to the United States constitution or its state constitutional counterpart, attaches only at or after the initiation of adversarial judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information or arraignment." State v. Palmer, 206 Conn. 40,64, 536 A.2d 936 (1988). In Palmer, the defendant was, "[a]t the time of the . . . identification . . . simply a suspect during the investigatory stages. No adversarial judicial criminal proceedings had yet been initiated . . . and, in fact, the defendant was not arrested on [the relevant charges] until . . . after the . . . identification. The factthat the defendant was in custody for unrelated crimes does not affectthe time at which his right to counsel attached[.]" (Emphasis added.)Id. Also see State v. Morrill, 197 Conn. 507, 532, 498 A.2d 76 (1985) (representation by counsel on a related matter has no effect on when right to counsel attaches as to separate matters when adversarial proceedings were not initiated).
As the trial court in the petitioner's underlying case ruled in its denial of the motions to suppress the identification, "[t]he fact is that we have two unrelated cases here with similarities. The mere fact that there are similarities does not preclude investigation in an attempt to CT Page 889 identify without having counsel present in the identification process, that same counsel being counsel who is appointed . . . on the other case. . . . The Court is of the opinion that these are separate and distinct cases and the mere fact [that] he was a suspect in one does not mean that the counsel appointed in the first one attached to [the second]." Pet'r Ex. B 1 (Tr., Sept. 23, 1992), at 46-7.
The trial court also found "that the in-court identification process was not suggestive. Again, there was ample opportunity for the victim to view all of the persons in the courthouse. He was advised by the detective that he was to look at all potential — at everybody in the courthouse to see if he recognized anybody. There was no greater emphasis given to those who were being arraigned that day amongst whom was the defendant in this case who had been brought back to court for a second appearance but was not being arraigned. There was no suggestiveness in any fashion whatsoever to that procedure. The victim recognized the defendant. . . . and he said he was 80 percent certain, which would . . . go not to the admissibility of this identification, but to the weight of the evidence and to be weighed by the jury. . . . [U]nder the totality of the circumstances, . . . the in-court identification was reliable and not suggestive and the motion to suppress is denied and an exception will be noted for the record." Id., at 50-1.
This Court finds, based on the foregoing, that the petitioner's claims arising out of the identification procedure are entirely without merit. The petitioner has failed to prove that the result of his criminal trial would have been different and has not undermined the confidence in the outcome of his criminal trial. The petitioner has also not shaken the confidence in the verdict that resulted in his appeal. Since the issue not raised by his appellate counsel lacks merit, the petitioner has not met his burden of proof to show that his appellate counsel failed to pursue a meritorious claim. Consequently, the Court dismisses the petition seeking habeas corpus relief alleging that both his trial counsel and appellate counsel were ineffective, the former for failing to adequately preserve the trial record for an appeal as to whether an identification procedure was unduly suggestive or in violation of the petitioner's constitutional rights, and the latter for failing to properly brief the issue of the identification line-up.
DAVID M. BARRY, JUDGE TRIAL REFEREE