STATE OF CONNECTICUT *v.* MICHAEL MARSALA
(15040)

O'Connell, Foti and Spear, Js.

Argued November 14, 1996—officially released January 14, 1997

*Jonathan Demirjian,* assistant public defender, for the appellant (defendant).

*Christopher T. Godialis,* deputy assistant state's attorney, with whom were *Jennifer Rollberg,* legal intern, and, on the brief, *Donald A. Browne,* state's attorney, and *Joseph T. Corradino,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of five counts of stalking in the second degree in violation of General Statutes § 53a-181d.[1] On appeal, he claims that the trial court improperly (1) allowed the state to amend the

---

[1] General Statutes § 53a-181d (a) provides: "A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety."

information on the day jury selection commenced, (2) denied the defendant's motion in limine to limit the cross-examination of the defendant, (3) allowed the state's cross-examination of the defendant to exceed the scope of the direct examination, (4) struck the defendant's entire testimony when he refused to answer certain questions after the court ordered him to do so, (5) denied his motion to dismiss that alleged that the evidence was insufficient to sustain his convictions, and (6) denied his motion to dismiss based on a claim that § 53a-181d is unconstitutionally vague on its face and as applied to him. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant met the victim, Tamara[2] Behan, in 1992, when he gave her a ride home one night. The defendant then began stopping by Tamara's apartment uninvited. On a number of occasions, he parked his car in front of her house in the early morning for long periods of time. This conduct continued until late June, 1993, when Tamara was imprisoned at Niantic Correctional Center. While Tamara was incarcerated, the defendant repeatedly sent her letters that frightened her.[3] Tamara did not contact the defendant or respond to his written communications.

On March 30, 1994, Tamara was transferred to Magdalene House, a residential drug rehabilitation facility on North Avenue in Bridgeport. House rules required that visitors be approved by staff, and visitation was allowed

---

[2] In *State* v. *Marsala*, 43 Conn. App. 527, 684 A.2d 1199 (1996), the victim in this case is referred to as Tamra.

[3] One of the letters read as follows: "I didn't do anything to hurt you until you hurt me and it still took me a long time to hurt back. But like you and your mother always say that was your choice, bad choice, because I make a lot better friend than I do enemy. As you could see, don't take me wrong, I do not think of you as my enemy but you do think of me as yours, so I have to protect myself and I will not start anything but I will strike back if you hurt me and you, yourself, know how really dangerous I am."

only at specified times. Two hours after Tamara first arrived at Magdalene House, the defendant entered, uninvited and without knocking, to look for Tamara. Upon seeing the defendant, Tamara covered her face with her hands and yelled for staff assistance. She was shocked and nervous. Despite being asked to leave, the defendant remained, insisting that he see Tamara. After approximately ten minutes, the defendant left the house, but remained in the immediate area outside. He stood across the street from Magdalene House for approximately one hour.

The defendant reappeared on North Avenue in the area outside Magdalene House on several more occasions.[1] On one occasion, he approached Tamara, insulted her, and told her that "these games have just begun" and that she "wasn't going to get him out of [her] life." On a number of other occasions, the defendant stood outside of Magdalene House for long periods of time and twice set up lawn chairs on the sidewalk. Once, he sent a female companion to knock on the door of Magdalene House.

From April 1 to June 28, 1994, the defendant made numerous harassing telephone calls to Jane Behan, Tamara's mother.[5] Tamara was the subject of each call, and the defendant made it clear that he did not intend to cease contact with Tamara. On April 5, 1994, Tamara

---

[4] The defendant was seen outside Magdalene House on March 31, April 1 (count one of information), April 3, April 4, April 7 (count two), April 10, April 25 (count three), May 30 (count four), June 14 (count five), June 17 (count six) and June 28 (count seven), 1994. He was acquitted on the first two counts, but convicted on the remaining five.

[5] The telephone calls were the subject of a separate criminal prosecution. At the time of this trial, the defendant was charged with twenty-seven counts of harassment in the second degree in violation of § 53a-183 and was awaiting trial. The victim of the harassment charges was Tamara's mother, Jane Behan. The defendant was convicted of twenty-five of the twenty-seven counts. We recently affirmed these convictions in State v. Marsala, 43 Conn. App. 527, 684 A.2d 1199 (1996).

and Jane Behan retained an attorney to represent them because they felt the situation with the defendant was getting out of hand. Their attorney contacted the defendant and ordered that he cease and desist all contact with both Tamara and Jane Behan.

The relevant procedural history is as follows. The defendant was arrested on two separate occasions, April 25 and June 28, 1994. He was held in custody in lieu of bond from June 28, 1994, until March 14, 1995, the date his trial began. On March 14, 1994, the state filed an amended information that charged five additional counts of stalking arising from the incidents on April 1, April 7, May 30, June 14 and June 17, 1994. The defendant was convicted of counts three through seven and was sentenced to a five year term of incarceration. This appeal followed.

I

The defendant first claims that the trial court abused its discretion by allowing the state to amend the information on the day that the trial began. He claims that the trial court's failure to strike the amended information prejudiced his substantive rights. We disagree.

"Before the commencement of a criminal trial, [Practice Book] § 623 controls the alteration of charges brought against a criminal defendant." *State* v. *Nixon*, 32 Conn. App. 224, 229, 630 A.2d 74, aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). "[A] prosecutor has broad authority to amend an information [before trial commences]. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 624."[6] (Internal quotation marks omitted.) *State* v.

[6] Practice Book § 624 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

*Snead,* 41 Conn. App. 584, 590, 677 A.2d 446 (1996). "It is clear that for purposes of Practice Book §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors." Id. In the present case, the state filed the amended information before voir dire began, thus § 623 applies. Section 623 provides: "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced."

In determining whether the defendant's rights were prejudiced, this court considers "the totality of the circumstances in deciding whether the defendant was surprised by the changes and whether the defense was hampered." *State* v. *Mazzetta,* 21 Conn. App. 431, 439, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990). A "bare assertion of prejudice is not sufficient" to support a claim of prejudice. Id., 438. "The defendant must provide a specific showing of prejudice in order to establish that he was denied the right of due process of law . . . ." *State* v. *Ramos,* 176 Conn. 275, 279–80, 407 A.2d 952 (1978). The defendant asserts that his ability to present his defense was hampered because, by adding five new counts on the eve of trial, the state deprived him of the opportunity to investigate the new charges adequately and to find potential witnesses. The defendant, however, did not request a continuance to investigate the additional charges further, and he makes this claim for the first time on appeal. See *State* v. *Ramos,* supra, 279. The defendant also argues that "[i]t seems that the state's motivation in filing the amendment was retaliatory and/or to force the defendant to request a continuance." The defendant, however, has

failed to make a showing of any actual or specific prejudice. The state turned over the police reports detailing the five additional charges early in the prosecution. Furthermore, the defendant's trial strategy was not dependent on a factual investigation. His sole defense at trial was that the charged conduct, nearly all of which he admitted at trial, did not constitute stalking. We conclude that the defendant has failed to establish that his defense was prejudiced by the addition of the new counts on the eve of trial.

## II

The defendant next claims that the trial court improperly failed to grant his motion in limine to preclude the state, on cross-examination, from questioning the defendant about the telephone calls made to Jane Behan. We disagree.

After he declared his intention to testify, the defendant made an oral motion to preclude this line of inquiry because the telephone calls were related to pending criminal charges. The defendant, however, "cannot reasonably claim that the Fifth Amendment gives him not only [the choice not to testify,] but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute." *Brown* v. *United States*, 356 U.S. 148, 155–56, 78 S. Ct. 622, 2 L. Ed. 2d 822 (1958). "A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics." (Internal quotation marks omitted.) *State* v. *Harrell*, 199 Conn. 255, 264, 506 A.2d 1041 (1986). In denying the defendant's motion in limine, the trial court recognized that "[w]hile an accused has the right not to take the witness stand, if he does take the stand and testifies in his own behalf, he may be cross-examined and impeached as any other witness. *Brown* v. *United States*, [supra, 154–55]." *State* v. *Schroff*, 198 Conn. 405, 412, 503 A.2d 167 (1986).

"It is well established that [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence." (Internal quotation marks omitted.) *State* v. *Kiser*, 43 Conn. App. 339, 361, 683 A.2d 1021 (1996). "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) Id. In the present case, the trial court denied the defendant's motion in limine because it chose to rule on the admissibility of evidence on a question by question basis and did not want to preclude the state from relevant lines of inquiry on cross-examination. We conclude that the defendant has not demonstrated that the trial court abused its discretion in denying his motion in limine.

### III

The defendant next claims that the trial court improperly allowed the state's cross-examination of the defendant to exceed the scope of his direct examination by allowing the state to question him regarding the telephone calls made to Jane Behan. This claim is without merit.

The defendant testified on his own behalf. During cross-examination, the state inquired about a telephone conversation between the defendant and Jane Behan. He asserts that, because he did not refer to the telephone calls on direct, any reference to them on cross-examination was outside the scope of the direct examination. "It is well settled that our rule restricts cross-examination to matters covered in the direct examination, except as they involve credibility alone. . . . A question is within the scope of the direct examination if it is designed to rebut, impeach, modify, or explain any of the defendant's direct testimony." (Citations omitted; internal quotation marks omitted.) *State* v. *Sharpe*, 195 Conn. 651, 657, 491 A.2d 345 (1985). "While proper cross-examination must be related to the subject matter

of direct examination . . . the trial court is allowed a liberal discretion in fixing its limits." (Internal quotation marks omitted.) *State* v. *Schroff*, supra, 198 Conn. 412. Where a court allows the cross-examination at trial, such as here, "it must be determined if there was an abuse of discretion. It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. . . . In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case." (Citations omitted; internal quotation marks omitted.) Id., 413.

In this case, the defendant, on direct examination, claimed that he visited the area surrounding Magdalene House because he was concerned for Tamara's safety. He further testified that he did not stalk or threaten Tamara. Through his direct testimony, the defendant put his intent in issue, and, as such, inquiry into the telephone calls was permissible. Considering the totality of the circumstances, we conclude that the trial court did not abuse its discretion in allowing the state to cross-examine the defendant regarding the telephone calls made to Jane Behan.

IV

The defendant next claims that the trial court improperly ordered him to answer, on cross-examination, questions regarding the telephone calls made to Jane Behan, and then struck his entire testimony when he refused to answer. We are unpersuaded.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Kiser*, supra, 43 Conn. App. 361. The defendant correctly asserts that "[t]he extreme sanction of striking the testimony of a witness should be resorted

to only where the invocation of the privilege blocks inquiry into matters directly relating to the crime charged and not those which are merely collateral . . . . *State* v. *Valeriano*, 191 Conn. 659, 666–67, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Paredes*, 35 Conn. App. 360, 366, 646 A.2d 234, cert. denied, 231 Conn. 925, 648 A.2d 166 (1994).[7] He then argues that the questions regarding the telephone calls were collateral, and, as a result, the court improperly struck the defendant's testimony. As we have previously concluded, however, the state's cross-examination was directly related to intent, which the defendant placed in issue during his direct testimony. As such, the matter of the telephone calls was not collateral. Furthermore, the court advised the defendant before he testified that if he was ordered to respond and then refused, the court would consider striking his testimony as a remedy. The court properly struck the defendant's testimony when he refused to respond to the state's cross-examination.[8]

## V

The defendant next claims that the evidence was insufficient to sustain his conviction. We conclude otherwise.

Our courts apply a two-prong test when reviewing a sufficiency of evidence claim. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts

---

[7] This same rule applies where the witness is a defendant. Our Supreme Court has recognized that "[a]n accused in taking the stand subjects himself to the same rules . . . which could by law be applied to other witnesses." *State* v. *Palozie*, 165 Conn. 288, 298, 334 A.2d 468 (1973).

[8] The defendant also argues that the state does not have a constitutional right to cross-examination and whatever rights the state has must be subordinate to the defendant's fifth amendment rights. He fails, however, to cite any legal authority in support of this assertion.

so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 126, 646 A.2d 169 (1994). "Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564. . . . *State* v. *Hamilton*, 30 Conn. App. 68, 71–72, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994)." (Internal quotation marks omitted.) *State* v. *Crump*, 43 Conn. App. 252, 256, 683 A.2d 402 (1996).

## A

The defendant first asserts that the state failed to adduce evidence that he intended to cause Tamara to fear for her physical safety[9] because he did not make verbal threats or harassing gestures. This claim is without merit.

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Intent may be and usually is inferred from conduct . . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Citations omitted; internal quotation marks omitted.) *State* v.

---

[9] See footnote 1.

*Torwich,* 38 Conn. App. 306, 314, 661 A.2d 113, cert. denied, 235 Conn. 905, 665 A.2d 906 (1995).

Section 53a-181d requires proof of the defendant's intent to cause another person to fear for her physical safety. *State* v. *Culmo,* 43 Conn. Sup. 46, 61, 642 A.2d 90 (1993). Proof of verbal threats or harassing gestures is not essential to prove a violation of § 53a-181d. The stalking statute was enacted to "address the situation where the criminal does not physically take an act against the person or does not verbally make a direct an[d] immediate threat of harm," but merely stalks the victim. 35 H.R. Proc., Pt. 9, 1992 Sess., p. 2968, remarks of Representative Thomas Luby; *State* v. *Culmo,* supra, 52. The statute "can be violated without a defendant's uttering a syllable, writing a word, or making a gesture." *State* v. *Culmo,* supra 74.

The state offered into evidence the letters that the defendant sent to Tamara while she was incarcerated.[10] The jury also heard evidence that the defendant told Tamara "these games have just begun, [and she] wasn't going to get him out of [her] life." The jury could have properly concluded, from the evidence adduced at trial, that the defendant intended to cause Tamara to fear for her physical safety.

B

The defendant also claims that the state failed to adduce evidence that Tamara reasonably feared for her safety[11] on April 25, 1994.[12] We disagree.

The defendant asserts that because Tamara's testimony regarding the April 25, 1994 incident was inconsis-

---

[10] See footnote 3. In another letter, the defendant suggested that he could arrange to have Tamara killed.

[11] See footnote 1.

[12] In his brief, the defendant also claims that there was insufficient evidence that Tamara reasonably feared for her safety on April 1 and 7, 1994. He was, however, acquitted on the two counts arising out of those dates.

tent, he must prevail on this claim.[13] Evidence is not insufficient, however, because it is conflicting or inconsistent. "[T]he [jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Citations omitted.) *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376 (1996). Because the jury was entitled to credit Tamara's direct testimony, we conclude that there was sufficient evidence that she reasonably feared for her safety.

C

The defendant claims that there was insufficient evidence that he "followed"[14] Tamara.[15] This claim is subsumed in our resolution of the defendant's final claim in part VI, infra.

VI

The defendant finally claims that the stalking statute, General Statutes § 53a-181d, is unconstitutionally vague

[13] On direct examination, Tamara testified that on April 25, 1994, she was "threatened" and "scared." On cross-examination, the following exchange between defense counsel and Tamara took place:

"[Defense Counsel]: You were not in fear of your physical safety from Mr. Marsala on April 25, him being outside Mary Magdalene House, as you indicated, for a half an hour while you, inside, were not even permitted to leave. Isn't that true?

"[Tamara]: With that situation, that's true."

[14] See footnote 1.

[15] The defendant also asserts, and the state concedes, that there was insufficient evidence that he was "lying in wait." The jury was charged on both theories. Where, however, there is "a factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation." *State* v. *Chapman*, 229 Conn. 529, 539, 643 A.2d 1213 (1994). Because we find that there was sufficient evidence of "following," we need not address this argument.

and overbroad on its face and as applied to him. We disagree.

In a well reasoned decision, Judge Lavine decided that the stalking statute at issue here was not facially void for vagueness and overbreadth. We adopt the holding and reasoning set forth in *State* v. *Culmo,* supra, 43 Conn. Sup. 67: "[O]n consideration of [§ 53a-181d] in its entirety, it cannot be said that a person of common understanding would fail to understand what conduct is prohibited. Section 53a-181d is relatively narrow in scope. It applies only to those who act with the specific intention of causing others to fear for their physical safety. The fear for one's physical safety must be reasonable. The conduct must be undertaken wilfully, not mistakenly, and it must occur repeatedly. The statute on its face does not implicate speech or expression in any way; it criminalizes conduct only, when undertaken with the requisite intent. The court concludes that any ambiguities in the statute's language are not so significant as to render it void for vagueness."

Furthermore, § 53a-181d is not overbroad.[16] Before the defendant can raise an overbreadth claim, he must first establish that there is a "realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." (Internal quotation marks omitted.) *State* v. *Proto,* 203 Conn. 682, 707, 526 A.2d 1297 (1987). "[T]he defendant must bear the burden of demonstrating that the first amendment even applies because to hold otherwise would be to create a rule that all conduct is presumptively expressive. . . . In undertaking this threshold analysis, courts have relied heavily on the distinction between statutes that regulate conduct, and

[16] The defendant claims that the statute is overbroad because it may potentially implicate the free exercise of religion, the rights of assembly and petition, the right to travel and freedom of the press. The defendant in *Culmo* raised a nearly identical claim. *State* v. *Culmo,* supra, 43 Conn. Sup. 71.

statutes that regulate expression." (Citations omitted; internal quotation marks omitted.) *State* v. *Culmo*, supra, 43 Conn. Sup. 73. The defendant's overbreadth challenge must fail because "§ 53a-181d does not, on its face, implicate recognized first amendment rights." Id., 75.

The defendant also claims that the stalking statute is unconstitutionally vague as applied to him. The defendant admits having deliberately maintained visual and physical proximity to Tamara on numerous occasions. He argues, however, that because his conduct occurred on a public sidewalk, and because he and Tamara were not on all occasions simultaneously outside Magdalene House, the statute is unconstitutionally vague as applied to him.[17] We adopt the definition of "following" set forth in *State* v. *Culmo*, supra, 43 Conn. Sup. 63: "Of course, 'following' implies proximity in space as well as time. Whether someone has deliberately maintained sufficient visual or physical proximity with another person, uninterrupted, over a substantial enough period of time to constitute 'following' will depend upon a variety of differing factors in each case. These are appropriate issues for the trier of fact to decide, not this court." Because the state adduced evidence that the defendant maintained uninterrupted visual and physical proximity with Tamara for substantial periods of time, we conclude that the statute is not vague as applied to him.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] The defendant argues that the terms "following" and "lying in wait" are both unconstitutionally vague as applied to him. The state concedes, however, that it failed to adduce evidence that the defendant was lying in wait, and we, therefore, will not review that portion of the defendant's claim.