******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* JARAH MICAH DAVIS
## (AC 40232)

Alvord, Prescott and Beach, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the second degree and delivery of alcohol to a minor, the defendant appealed to this court. The defendant's conviction stemmed from his alleged sexual assault of the sixteen year old victim, M, while she was heavily intoxicated. At trial, the defendant admitted that he had sexual intercourse with M but maintained she had consented to the encounter. Five days before jury selection began, the state, which initially had charged the defendant with sexual assault in the first degree and delivery of alcohol to a minor, filed a substitute information adding an additional count of sexual assault in the second degree. The defendant filed a motion to dismiss the count of sexual assault in the second degree, which the court denied. On appeal, the defendant claimed, inter alia, that the evidence was insufficient to prove beyond a reasonable doubt that M was physically helpless as defined by statute (§ 53a-65 [6]) for a conviction of sexual assault in the second degree (§ 53a-71 [a] [3]). Held:

1. The evidence admitted at trial was sufficient to prove beyond a reasonable doubt that the defendant committed sexual assault in the second degree, as it was sufficient to prove beyond a reasonable doubt that M was rendered physically helpless by way of intoxication: M's testimony that she could not physically or verbally communicate her lack of consent during the sexual intercourse due to her intoxication was sufficient to prove that she was physically helpless, and the defendant's assertion that M's ability to communicate her lack of consent at one point during the sexual assault precluded the possibility that she later became physically helpless was unpersuasive, as § 53a-71 (a) (3) does not impose the requirement that the victim be physically helpless during the entirety of the sexual assault and sexual assault in the second degree occurs when an individual who was able to communicate her consent or lack thereof at the beginning of the sexual encounter later becomes unable to do so and the defendant continues to engage that person in sexual activity; moreover, even though the defendant attempted to portray his conduct with respect to M as one continuous alleged assault, case law instructs that his various conduct may properly be treated as distinct acts and punished as separate crimes.

2. The trial court did not abuse its discretion in denying the defendant's motion to dismiss the count of the substitute information charging him with sexual assault in the second degree:

   a. The state's decision to charge the defendant with sexual assault in the first and second degree did not prevent the defendant from presenting a defense; the defendant's claim that an information which charges two or more separate offenses in the alternative is fatally defective because of its failure adequately to apprise the defendant of the specific charge against him was unavailing, as the state did not charge the defendant with two or more offenses in the alternative, the substitute information charged each offense in a separate count and made clear that the state intended to pursue a conviction for both, and the state's method of charging did not force the defendant to take alternative factual positions at trial or prevent him from presenting a defense.

   b. The defendant could not prevail on his claim that the timing of the state's filing of the substitute information violated his substantive rights; the state properly relied on the applicable rule of practice (§ 36-17) to file a substitute information prior to trial, to the extent that the defendant claimed that he was prejudiced by the state's filing of the substitute information because he did not have time to hire an expert, he should have requested a continuance, and the state, by adding the charge of sexual assault in the second degree, did not substitute a theory of liability but, rather, added one based on facts that were contained in the defendant's arrest warrant and known to him throughout the entirety of the proceedings.

Argued January 16—officially released April 10, 2018

*Procedural History*

Substitute information, charging the defendant with the crimes of sexual assault in the first degree, sexual assault in the second degree, and of delivery of alcohol to a minor, brought to the Superior Court in the judicial district of New London and tried to a jury before the court, *Jongbloed, J.*; verdict of guilty of sexual assault in the second degree and delivery of alcohol to a minor; thereafter, the court denied the defendant's motion for a judgment of acquittal and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Bryan P. Fiengo*, for the appellant (defendant).

*Theresa Anne Ferryman*, senior assistant state's attorney, with whom was *Michael Regan*, state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Jarah Micah Davis, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3) and one count of delivery of alcohol to a minor in violation of General Statutes § 30-86 (b) (2).[1] On appeal, the defendant claims that (1) the evidence admitted at trial was not sufficient to prove beyond a reasonable doubt that the alleged victim was physically helpless within the meaning of General Statutes § 53a-65 (6) as required for a conviction of sexual assault in the second degree, and (2) the trial court improperly denied his pretrial motion to dismiss the second count of the state's substitute information charging him with sexual assault in the second degree. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 22, 2015, the victim, M,[2] attended a graduation ceremony for her cousin. M was sixteen years old at the time. Her cousin's adult sister, K, and her husband, the defendant, were also in attendance. Both K and the defendant are approximately ten years older than M.

After the ceremony, K's parents hosted a graduation party for friends and family at their home. M consumed two beers at the party. At some point, K invited M to stay the night at her house. M had never been to K's house before and thought it would be fun.

With her parents' permission, M left the party with K and the defendant around 11 p.m. After arriving at the defendant's house, K gave M some comfortable clothes in which to change. K then opened a bottle of wine and she and M both drank a glass.

Soon after, K showed M the finished basement. She had converted it into a "man cave" for the defendant, who was in the military, while he was deployed. The room featured a bar stocked with various types of hard alcohol.

For a few hours, M, K, and the defendant sat at the bar in the finished basement talking and drinking. During this time, the defendant poured M multiple shots of hard liquor, as well as a small glass of Dewars and vodka. M soon became heavily intoxicated, which resulted in her stumbling, slurring her words, and having blurred vision.

At some point, K went upstairs to check on her young son, leaving M and the defendant alone. When K did not return, the defendant went upstairs and found her sleeping in their bedroom.

After seeing that K was asleep, the defendant went back downstairs, took M's hands, and began dancing with her. The two then began kissing. The defendant

then pushed M against the couch, put his hands down her pants, and began digitally penetrating her vagina. M repeatedly told the defendant to stop and attempted to push him off of her. She had difficultly physically resisting him, however, given her level of intoxication.

Shortly thereafter, M found herself lying on her back on the floor of the basement.[3] The defendant then lifted M's legs, took off her pants and underwear, and began penetrating her vagina with his penis. At that point, M was so intoxicated that she was unable to move or speak.

After the assault, the next thing M recalled was that she was on the couch in the defendant's basement and was vomiting on herself. The defendant took M upstairs, undressed her, and put her in the shower. After showering, M went to sleep in a spare bedroom.

The next morning, M was awakened by K, who had laundered her dirty clothes. M did not tell K about the assault because she was "still processing it and was terrified."

Later that afternoon, while M and her mother were driving home, M started crying and told her mother that the defendant assaulted her. Her mother decided to take M to the hospital, where she was evaluated for a sexual assault and evidence was collected. DNA testing of biological samples obtained from M confirmed that the defendant had sexual intercourse with her.

Soon after, M reported the assault to the police. The defendant subsequently was arrested and initially charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and delivery of alcohol to a minor in violation of § 30-86 (b) (2). Five days before jury selection was scheduled to begin, the state filed a substitute information in which it additionally charged the defendant, in a separate count, with sexual assault in the second degree in violation of § 53a-71 (a) (3).

The defendant was subsequently tried before a jury. At trial, the defendant elected to testify and admitted that he had sexual intercourse with M but maintained that she had consented to it.

The jury acquitted the defendant of sexual assault in the first degree but convicted him of sexual assault in the second degree and delivery of alcohol to a minor. He was sentenced to nine years' incarceration, execution suspended after fifty months, followed by ten years of probation. Additional facts will be set forth as necessary.

I

The defendant first claims that the evidence admitted at trial was not sufficient to prove beyond a reasonable doubt that M was physically helpless within the meaning of § 53a-65 (6), as required to obtain a conviction of

sexual assault in the second degree. Specifically, the defendant argues that M's testimony that she repeatedly had told the defendant that she did not consent to the sexual conduct negates a conclusion that she was physically helpless. We disagree.

The following additional facts and procedural history are relevant to the resolution of the defendant's claim. At trial, M testified that she voluntarily danced with and kissed the defendant. She further testified that, after a few minutes of dancing and kissing, the defendant forced his hands down her pants and began digitally penetrating her. M resisted the defendant's advances by telling him "no" several times and attempting to push him away.

After the defendant forced his hands down her pants, M testified: "I remember being between the wall and the couch. I was on my back laying down on the floor on a rug and he was standing over me and I remember him taking my pants and underwear off." M did not, however, remember how she went from standing to lying on her back. Thereafter, M testified that the defendant penetrated her vagina with his penis.

The following exchange then occurred between the prosecutor and M:

"Q. What happened after his penis entered your vagina?

"A. I was on the ground and I couldn't move.

"Q. Okay. When you say you couldn't move, describe what you mean.

"A. It was the weirdest feeling. I was—I could not move. I was so incapacitated. I was—I just remember staring at the ceiling and I felt him doing that to me but I—I could not fight back

"Q. Were you able to speak?

"A. No."

M further testified that she was not sure how long the assault lasted, and that the next thing she remembered was vomiting on the couch in the defendant's basement.

After the state rested, the defendant filed a motion for a judgment of acquittal as to all counts of the substitute information. The defendant argued, inter alia, that the state had failed to present sufficient evidence to prove beyond a reasonable doubt that he committed sexual assault in the second degree because M was not physically helpless during the sexual encounter. The court denied the defendant's motion and concluded that the jury reasonably could find that M was physically helpless based on her testimony that she was unable to speak or move during the penile-vaginal intercourse.

"The appellate standard of review of sufficiency of

the evidence claims is well established. In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"Our review is a fact based inquiry limited to determining whether the inferences drawn by the [fact finder] are so unreasonable as to be unjustifiable. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the [fact finder's] opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . ." (Internal quotation marks omitted.) *State* v. *Whitnum-Baker*, 169 Conn. App. 523, 526, 150 A.3d 1174 (2016), cert. denied, 324 Conn. 923, 155 A.3d 753 (2017).

"A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . such other person is physically helpless . . . ." General Statutes § 53a-71 (a) (3). " 'Physically helpless' means that a person is (A) unconscious,[4] or (B) for any other reason, is physically unable to resist an act of sexual intercourse or sexual contact or to communicate unwillingness to an act of sexual intercourse or sexual contact." (Footnote added.) General Statutes § 53a-65 (6).

Recently, our Supreme Court concluded that the statutory term "physically helpless" has "a highly particularized meaning . . . ." *State* v. *Fourtin*, 307 Conn. 186, 198, 52 A.3d 674 (2012). Specifically, in order to be rendered physically helpless, the complainant must have been either (1) unconscious, or (2) unable to communicate—both verbally and physically—her lack of consent to the sexual act. Id., 199–200. The latter scenario commonly involves sexual assault that occurs while the victim is sleeping or heavily intoxicated. See *State* v. *Fourtin*, supra, 307 Conn. 202 ("it is the rare case that does *not* involve a victim who was physically helpless due to unconsciousness, sleep or intoxication" [emphasis in original]).

At trial, the state argued that M was unable to communicate her lack of consent to the penile-vaginal intercourse because she was heavily intoxicated. M testified that she consumed at least one glass of wine, multiple shots of hard liquor, a small glass of Dewars, and a small glass of vodka after arriving at the defendant's home. She described her condition after consuming the alcohol as "not well," and testified that she was stumbling, had blurred vision, and was slurring her words. Critically, M further testified that she was "so incapacitated" during the penile-vaginal intercourse and could not move or speak. Moreover, she could not recall the events that occurred immediately before or after the assault. Based on this testimony, the jury reasonably could have found that M was unable to communicate her lack of consent to the defendant's conduct. Thus, the evidence admitted at trial was sufficient to prove beyond a reasonable doubt that M was rendered physically helpless by way of intoxication.

The defendant argues, however, that M's ability to communicate her lack of consent to the defendant's digital penetration of her vagina earlier during the assault "foreclosed any possibility of [M] being considered physically helpless under our law." We are not persuaded by the defendant's assertion that M's ability to communicate her lack of consent at one point during the sexual assault precluded the possibility that she later became physically helpless.

First, in a closely related context, this court has concluded that sexual assault in the first degree occurs when a person who initially consents to sexual activity later withdraws that consent, and the defendant forces the victim to continue to engage in that activity. See *State* v. *Siering*, 35 Conn. App. 173, 179, 185 (trial court correctly instructed jury that "if there exists consensual intercourse and the alleged victim changes her mind and communicates the revocation or change of mind of consent and the other person continues the sexual intercourse . . . then it would be sexual assault." [internal quotation marks omitted]), cert. denied, 231 Conn. 914, 648 A.2d 158 (1994). Thus, it logically follows that sexual assault in the second degree occurs when, like in the present case, an individual who was able to communicate her consent or lack thereof at the beginning of the sexual encounter later becomes unable to do so and the defendant continues to engage that person in sexual activity.

Second, we find it significant that § 53a-71 (a) (3) does not impose the requirement that the victim be physically helpless during the entirety of the sexual assault. Although there is no Connecticut case law addressing this issue, Pennsylvania appellate courts have interpreted a similar, albeit not identical, statute and concluded that a victim need not be unconscious or physically helpless during the entire encounter for

the conduct to constitute a sexual assault.[5] See *Com. v. Erney*, 548 Pa. 467, 473–74, 698 A.2d 56 (1997) (concluding that "[b]ecause the evidence supports the finding that the victim was intermittently unconscious throughout the assault and was at all relevant times in such impaired physical and mental condition so as to be unable to knowingly consent . . . [t]hat intercourse . . . is sufficient to constitute rape of an unconscious individual" [footnote omitted]); see also *Com. v. Diaz*, 152 A.3d 1040, 1045 (Pa. Super. 2016) (upholding conviction for rape of unconscious individual because there was evidence from which jury could have reasonably concluded that victim was unconscious for at least portions of assault).

Third, although the defendant attempts to portray his conduct with respect to M as one continuous alleged assault, our case law instructs that his various conduct may properly be treated as distinct acts and punished as separate crimes. This court has held that "distinct repetitions of a prohibited act, *however closely they may follow each other* . . . may be punished as separate crimes . . . . The same transaction, in other words, may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense." (Emphasis in original; internal quotation marks omitted.) *State* v. *Howard F.*, 86 Conn. App. 702, 713, 862 A.2d 331 (2004) (upholding defendant's conviction for two separate counts of risk of injury to child arising out of one course of conduct; defendant was convicted for both fondling victim's genitals and breasts as well as engaging victim in penile-vaginal intercourse), cert. denied, 273 Conn. 924, 871 A.2d 1032 (2005).

Thus, because M's testimony that she could not physically or verbally communicate her lack of consent during the penile-vaginal intercourse is sufficient to prove that she was physically helpless, the fact that she was able to communicate during the earlier stages of the assault does not negate our ultimate conclusion. We therefore determine that the evidence admitted at trial was sufficient to prove beyond a reasonable doubt that the defendant committed sexual assault in the second degree.

II

The defendant next claims that the trial court improperly denied his motion to dismiss the second count of the state's substitute information charging him with sexual assault in the second degree. We disagree.

The following additional facts are relevant to the resolution of the defendant's claim. On September 14, 2015, the defendant was charged in the original information with one count of sexual assault in the first degree in violation of § 53a-70 (a) (1) and one count of delivery of alcohol to a minor in violation of § 30-86 (b) (2). On

December 29, 2016, five days before jury selection was scheduled to begin, the state filed a substitute information charging the defendant, in an additional count, with sexual assault in the second degree in violation of § 53a-71 (a) (3).

On December 30, 2016, the defendant filed a motion to dismiss the second count of the substitute information charging sexual assault in the second degree. Therein, the defendant argued that the second count was insufficient as a matter of law.

On January 6, 2017, the court heard oral argument on the defendant's motion to dismiss. The defendant argued that the additional count alleging sexual assault in the second degree was legally insufficient because "[M's] statements to the police indicate[d] . . . a physical struggle." The defendant further argued that the state's late filing of the substitute information prejudiced him because, had he known that the state was going to pursue the additional charge of sexual assault in the second degree, he would have hired an expert to "undermine that type of theory from the state." The defendant, however, did not request a continuance so that he could retain an expert.

The court then made an oral ruling from the bench denying the defendant's motion to dismiss, concluding that the warrant alleged facts sufficient to support the charge of sexual assault in the second degree in violation of § 53a-71 (a) (3).[6] The court further concluded that the defendant was not prejudiced by the state adding that charge so close to trial because the facts supporting it were contained in the arrest warrant and had been known to the defendant throughout the entirety of the proceeding.

On January 9, 2017, the court allowed the defendant to reargue his motion to dismiss. At that time, the defendant raised an additional ground for dismissal, arguing that the state improperly charged two substantively different crimes based on the same set of facts. In so arguing, the defendant relied exclusively on *State* v. *Hufford*, 205 Conn. 386, 533 A.2d 866 (1987), for the proposition that the state could not charge sexual assault in the first degree, which requires the use of force, and sexual assault in the second degree, which requires the state to prove that the victim was physically helpless, when both charges arose out of one alleged assault.

The state countered that the defendant's characterization of *Hufford* was incorrect and that it was proper for a defendant to be charged with multiple offenses depending on the facts of the particular assault. The court then once again denied the defendant's motion to dismiss, without prejudice, concluding that his alternative ground for dismissal was premature because it concerned "a factual issue with regard to what the

evidence in the case [was] going to show."

### A

The defendant first argues that the trial court improperly denied his motion to dismiss the second count of the substitute information charging him with sexual assault in the second degree because the state's method of charging violated his sixth amendment right to present a defense. We disagree.

Whether the state's method of charging violated the defendant's sixth amendment right to present a defense constitutes a question of law subject to plenary review. See *State* v. *Dixon*, 318 Conn. 495, 511, 122 A.3d 542 (2015). The defendant first argues that our Supreme Court's decision in *Hufford* prohibits the method of charging employed by the state in the present case. In *Hufford*, the defendant was charged in multiple counts with various sexual offenses. *State* v. *Hufford*, supra, 205 Conn. 388. In one count, however, the state charged the defendant with sexual assault in the fourth degree by alleging alternate theories of liability—i.e., that the defendant had sexual contact with the complainant either while she was physically helpless and/or without her consent. Id., 395.

In that case, the state did not introduce any evidence at trial regarding whether the complainant was physically helpless during the alleged assault. Nevertheless, the court instructed the jury that it could convict the defendant on that count if it found that the complainant was physically helpless or had not consented to the sexual contact. Id., 399. The defendant was subsequently convicted of sexual assault in the fourth degree. Id.

On appeal, the defendant in *Hufford* claimed that the information was legally improper because the count charging him with sexual assault in the fourth degree alleged two alternative theories of liability. The defendant argued that this method of charging, coupled with the court's erroneous instruction to the jury, violated his sixth amendment right to present a defense and to a unanimous verdict. Id., 395. The defendant also claimed that the evidence was insufficient to support his conviction for that offense because the state had not presented any evidence that showed that the complainant was physically helpless during the alleged assault. Id., 395–96.

Our Supreme Court disagreed with the defendant in *Hufford* that the state's method of charging in that case was improper. Id., 397. The court ultimately set aside the defendant's conviction for sexual assault in the fourth degree, however, because "[a] verdict rendered on a single count charging alternative methods of committing the same crime may be upheld only if there is sufficient evidence to support the verdict as to each alternative charged," and the state had not presented

any evidence that the complainant was physically helpless. Id., 399. Thus, the state's method of charging the defendant and failure to offer evidence at trial that proved that the alleged victim was physically helpless ran the risk that jurors convicted the defendant on a theory of liability for which there was no evidence and/or sanctioned a nonunanimous verdict.

Even though the manner in which the defendant was charged in the present case is different from how the defendant was charged in *Hufford*, the defendant, in support of his claim, nevertheless relies on the following language in *Hufford*: "[A]n information which charges two or more separate offenses in the alternative is fatally defective because of its failure adequately to apprise the defendant of the specific charge against him" *State* v. *Hufford*, supra, 205 Conn. 397.

The defendant's reliance on this language from *Hufford* is misplaced for at least two reasons. First, in the present case, the state did not charge the defendant with two or more offenses in the alternative. The substitute information charged each offense in a separate count and made clear that the state intended to pursue a conviction for both. See *State* v. *Rios*, 171 Conn. App. 1, 23, 156 A.3d 18 (amended information clearly charged defendant with multiple counts of intentional assault and reckless endangerment because "[the amended information] did not in any way suggest that [the separate offenses] represented alternative theories of liability"), cert. denied, 325 Conn. 914, 159 A.3d 232 (2017).

Second, the language in *Hufford* relied on by the defendant must be read in context as to refer only to an information that charges two or more offenses in the alternative *within a single count*.[7] In the present case, the state charged the defendant with sexual assault in the first and second degree in separate counts. Thus, because the substitute information did not charge the defendant with the two offenses either (1) in the alternative, or (2) within a single count, it does not run afoul of *Hufford*.

The defendant further argues that the substitute information, in which the state alleged that he had committed both sexual assault in the first degree as well as sexual assault in the second degree during a single encounter, forced him to take alternative factual positions at trial thereby undermining his defense that M consented to the sexual activity. Specifically, the defendant argues that the inclusion of the charge of sexual assault in the second degree put him in the untenable position of arguing that M was not physically helpless because she was able to communicate her *lack* of consent, while at the same time asserting that she had consented to the sexual acts. We disagree.

The state's method of charging did not force the defendant to take alternative factual positions. Rather,

the defendant's assertion that M consented to the entire sexual encounter, if credited by the jury, would have provided a complete defense to both sexual assault in the first and second degree. With respect to sexual assault in the first degree, the defendant's testimony that M consented to sexual contact and intercourse with him, if credited by the jury, would have negated a conclusion that he used force to carry out those acts. Likewise, his testimony that M communicated her consent to the sexual activity would have precluded the possibility that she was physically helpless as required for a conviction of sexual assault in the second degree. Thus, the state's decision to charge the defendant with sexual assault in both the first and second degree did not prevent him from presenting a defense.

B

Finally, the defendant argues that the court abused its discretion by denying his motion to dismiss the second count of the substitute information charging him with sexual assault in the second degree because the timing of the state's filing of that information violated his substantive rights. We disagree.

"On appeal, our [standard of] review . . . of the court's decision to permit an amendment to the information is one of abuse of discretion." (Internal quotation marks omitted.) *State* v. *Grant*, 83 Conn. App. 90, 96–97, 848 A.2d 549, cert. denied, 270 Conn. 913, 853 A.2d 529 (2004). "Before a trial begins, the state has broad authority to amend an information pursuant to Practice Book § 36-17;" id., 97; which provides, "[i]f the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in its discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced." Practice Book § 36-17. For purposes of Practice Book § 36-17, a criminal trial begins with the voir dire of the prospective jurors. *State* v. *Tanzella*, 226 Conn. 601, 608, 628 A.2d 973 (1993).

"In determining whether the defendant's rights were prejudiced, this court considers the totality of the circumstances in deciding whether the defendant was surprised by the changes and whether the defense was hampered. . . . A bare assertion of prejudice is not sufficient . . . . The defendant must provide a specific showing of prejudice in order to establish that he was denied the right of due process of law . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Marsala*, 44 Conn. App. 84, 89, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997).

In the present case, the state properly relied on Practice Book § 36-17 to file a substitute information prior

to trial. The defendant asserts, however, that he was prejudiced because, at trial, he "lamented the fact that he was not able to retain an expert to refute [the state's allegation that M was physically helpless]." To the extent that the defendant is arguing that he was prejudiced by the state's filing of the substitute information because he did not have time to hire an expert, he should have requested a continuance. See *State* v. *Marsala*, supra, 44 Conn. App. 88–90 (court did not abuse discretion in allowing state to file amended information alleging five additional charges on day that trial began; defendant did not request continuance to allow time to investigate additional charges).

Furthermore, as the court properly noted at oral argument on the defendant's motion to dismiss, in adding the charge of sexual assault in the second degree the state was not substituting a theory of liability, but rather adding one based on facts that were contained in the defendant's arrest warrant and known to him throughout the entirety of the proceedings. See *State* v. *Marsala*, supra, 44 Conn. App. 90 (defendant was not prejudiced by state's late filing of amended information in part because "the state turned over the police reports detailing the five additional charges early in the prosecution"). Thus, under all of these circumstances, we conclude that the court properly denied the defendant's motion to dismiss.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant does not challenge on appeal his conviction of delivery of alcohol to a minor.

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] M testified that she does not remember how she went from standing to lying on the floor.

[4] The state does not contend that M was unconscious at any time during the assault.

[5] We recognize that these cases, unlike the present case, involve a claim that the victim was unconscious for at least part of the sexual conduct. This distinction, however, does not undermine our reliance on them because we cite them for a broader principle. That is, a defendant may be convicted of a sexual offense if he has sexual contact with a person who, although she is able to express consent or lack thereof at some point during a sexual encounter, becomes unable to do so subsequently because she either has become unconscious or is so intoxicated that she is unable to communicate at all.

[6] On appeal, the defendant does not challenge the court's conclusion that the warrant alleged sufficient facts to support the charge of sexual assault in the second degree.

[7] The court in *Hufford* did not describe with any detail the way in which the state pleaded the particular counts at issue. This lack of detail creates potential ambiguity regarding whether the state pleaded alternative theories of liability in one count or separate counts. Our review of *Hufford*, however, leads us to conclude that the court was discussing a scenario in which alternative methods of committing the same offense were pleaded in a single count. First, in describing the manner in which the trial court's instruction to the jury was improper, it stated as follows: "A verdict rendered on a *single count* charging alternative methods of committing the same crime may be upheld only if there is sufficient evidence to support the verdict as to each alternative charged." (Emphasis added.) *State* v. *Hufford*, supra, 205 Conn. 399. Second, our review of the substitute information and bill of

particulars in *Hufford* confirms that the state pleaded alternative methods of committing sexual assault in the fourth degree in a single count. Thus, any language in *Hufford* regarding limitations on the state's ability to charge alternative methods of committing the same offense must be limited to instances in which the state has done so in a single count.

[8] The defendant also argues that *State* v. *Secore*, 194 Conn. 692, 485 A.2d 1280 (1984), prohibits the state from adding a charge on the eve of trial that is substantively different than the one for which the defendant was arrested. The defendant's characterization of our Supreme Court's holding in *Secore* is incorrect. The issue in that case was whether, under the old indictment system, the defendant was improperly sentenced as a persistent felony offender because the substantive offense of which he was convicted was charged in a different indictment than the persistent felony offender violation. Id., 694. *Secore* did not concern issues relating to the timing of the state's filing of the substitute information and thus has no bearing on the present case. See id., 701 (defendant made no claim that he was prejudiced or unfairly surprised by the substitute information).